**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TECH TRADERS, INC.,**

        **Plaintiff,**

**-vs-**                                               **Case No. 6:03-cv-199-Orl-22DAB**

**ALBERT E. ABRUZZESE and HY-TECH**
**THERMAL SOLUTIONS, LLC,**

        **Defendants.**
_____

**ORDER AND REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration at an evidentiary hearing including oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR CONTEMPT AND FOR ORDER FINDING DEFENDANTS HAVE VIOLATED THE PERMANENT INJUNCTION AND AWARDING LIQUIDATED DAMAGES (Doc. No. 64)** |
| **FILED:** | **November 5, 2004** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

| | |
|---|---|
| **MOTION:** | **OBJECTION AND MOTION TO STRIKE AFFIDAVIT OF DAVID PAGE (Doc. No. 72)** |
| **FILED:** | **December 16, 2004** |

**THEREON** it is **ORDERED** that the motion is **DENIED** as moot in light of the Court's evidentiary hearing.

Case 6:03-cv-00199-ACC-DAB   Document 79   Filed 01/28/05   Page 2 of 8 PageID 759

> **MOTION:**  **DEFENDANTS' MOTION TO QUASH SUBPOENAS (Doc. No. 75)**
>
> **FILED:**     January 7, 2005
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED** as moot.

Plaintiff filed suit against Defendants Hy-Tech Thermal Solutions, LLC and its director of operations, Albert Abruzzese, for trademark infringement and unfair competition. Doc. No. 1. Plaintiff now seeks liquidated damages pursuant to a consent judgment that required Defendants to delete infringing terms from their websites and notify website search engines of the modifications. Defendants contend that they changed their own websites but that they have no control over infringing terms contained in search engines owned by private entities.

Plaintiff Tech Traders, Inc. sells insulating additives for paints. In June 1996, David Page, owner of Tech Traders, adopted the trademark INSULADD as a source identifier for its "powdered ceramic microsphere blend" which is an insulating additive for paints. Doc. No. 1 ¶ 8. In December 2001, Plaintiff hired Abruzzese as a product representative to sell Plaintiff's INSULADD products worldwide. *Id.* ¶ 12. At some point, Plaintiff learned that Abruzzese was competing with Plaintiff by creating and maintaining competitive websites containing product name references and domain names confusingly similar to INSULADD and Plaintiff terminated the product representative contract in August 2002. *Id* ¶ 13. Plaintiff subsequently filed suit against Defendants on February 20, 2003, alleging trademark infringement and unfair competition. Doc. No. 1.

On May 4, 2004, the Court entered the parties' Consent Final Judgment and Permanent Injunction (Doc. No. 62). As part of the Consent Judgment, the Defendants stipulated that Plaintiff's

trademark "INSULADD" was valid and that they had infringed it. Doc. No. 62 ¶ 1. Defendants further agreed to be permanently enjoined from using the mark INSULADD, or colorable imitations, including the marks INSULAID and INSUL-AID. Doc. No. 62 ¶ 3.

At issue for purposes of Plaintiff's Motion for Contempt[1] is paragraph 4 of the Consent Judgment, which reads:

> 4. Within thirty (30) days from the date of this Order, both Defendants shall have removed all of Defendants' Internet references, postings, advertisements or search engine listings containing the marks INSULADD, INSULAID, INSUL-AID or any colorable imitation thereof. To the extent that Defendants do not control such references, postings, advertisements or search engine listings, the Defendants shall notify each publisher of such in writing and request each publisher to withdraw the objectionable references, and provide each publisher with a copy of this Order. Defendant will provide copies of those communications to Plaintiff.

Doc. No. 62 ¶ 4. Plaintiff seeks a finding of contempt and liquidated damages for Defendants' alleged use of the terms "INSULAID", "INSUL-AID" and "INSUL-ADD" to direct web searches to its sites; and use of the term "Insul-Prime" to describe Defendants' products in website literature. Doc. No. 64 ¶¶ 1-6, 20 (Remedy section). Defendants agreed in the parties' Settlement Agreement that Plaintiff would be entitled to liquidated damages of $2,000 for each infringing act, plus reasonable attorney's fees. *See* Doc. No. 64, Ex. A ¶ 3.

**Analysis**

To determine whether a defendant has violated a permanent injunction, the Court must consider the totality of the documents to determine whether an ordinary person would be able to ascertain exactly what conduct the consent judgment proscribes. *Abbott Laboratories v. Unlimited*

---

[1] Although Plaintiff originally sought liquidated damages for forty specific violations of the Consent Judgment, after testimony and argument at the hearing, Plaintiff withdrew its claims for all but seven of the violations (Nos. 1-6, 20).

*Beverages, Inc.,* 218 F.3d 1238, 1241 (11th Cir. 2000). The Court should begin with a close examination of the judgment. *Id.* at 1240. As the Eleventh Circuit has explained:

> [A] court must craft its orders so that those who seek to obey may know precisely what the court intends to forbid. . . . Thus, Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained."

*Id.* (Fed. R. Civ. P. 65(d)). Under this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Id.* (quoting *American Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407, 1411 (11th Cir. 1998)). A consent judgment need not recite every possible way in which a violation might occur when the proscribed conduct is readily ascertainable to an ordinary person. *Id.* at 1241. If the Court finds contempt, the district court has broad discretion to fashion an appropriate remedy. *Id.* at 1242 (*Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1519 (11th Cir. 1990)).

Sales over the Internet, as sought by the marketing at issue in this case, have grown exponentially in commerce. As one court has observed:

> We are in a worldwide marketplace. The Internet is a vast and expanding worldwide network of computers and other devices linked together by various telecommunications media. In recent years, businesses have begun to use the Internet to provide information and products to consumers and other businesses around the planet. The Internet makes it possible to conduct business throughout the world entirely from a desktop.

*Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D. Ill. 2000) (discussing internet sales in the context of deciding subject matter jurisdiction).

Defendant Abruzzese testified that he is a webmaster who builds and publishes webpages. Based on his testimony at the hearing, Abruzzese removed all listing references to INSUL-ADD or

INSUL-AID on websites that he controlled within twenty-four hours of the Consent Judgment's entry. However, based on his testimony, Abruzzese does not dispute that he made *no effort* to notify any Internet entity, such as search engine providers, to remove the objectionable references and provide the publishers with a copy of the Consent Judgment. For this reason, Defendants did not provide any copies of such communications to Plaintiff. Abruzzese testified that he resubmitted his revised listings to the search engines on a weekly basis. He testified further that if he had been notified of the objectionable references, he would have removed them, but "he can't control" the search engines, so (in his opinion) he was not responsible for those references appearing in the search engine searches.

As evidence that the objectionable terms were still appearing on sites connected to the Defendants, there was disputed testimony from David Page regarding several internet searches he had done in September 2004, four months after the Consent Judgment was entered. Page testified that searches for the objectionable terms "INSULAID" and "INSUL-AID" resulted in certain search engines generating a list of businesses that sold such products with two of Defendant Abruzzese's companies[2] in the top three: "alsbiznet" and "hy-techsales.com." Defendants argued that the search engines that brought up those webpages were based on "cached" information – which is collected periodically and stored by the search engine and is not immediately updated. Although Mr. Page testified that he remembered selecting the up-to-date pages[3] (as opposed to older "cached" pages) to determine whether Mr. Abruzzese had changed the current (as of September 2004) websites, he could not locate those pages in the evidence submitted at the hearing. Neither Mr. Abruzzese nor Mr. Page

---

[2] Under the terms of the Settlement Agreement, Defendants are also liable for liquidated damages for violations of the injunction by those acting in concert or privity with them. Doc. No. 64, Ex. A ¶ 3.

[3] Page testified that he selected the up-to-date pages by pressing the "refresh" button on all searches he did.

testified as computer experts or forensic computer experts. Thus, the evidence before the Court was only the disputed and equivocal testimony of both parties about whether the webpages within Defendants' control were changed. For this reason, the Court does not find a violation of ¶¶ 1-6, and 20 (Doc. No. 64 at 4, 6) of the Consent Judgment.

However, by Mr. Abruzzese's own admission, he violated ¶ 4 of the Consent Judgment which required him to notify each publisher of references, postings, advertisements or search engine listings in writing and request each publisher to withdraw the objectionable references, and provide each publisher with a copy of the Consent Judgement. Mr. Abruzzese made absolutely no effort to comply with this provision of the Consent Judgment. He cannot claim ignorance as to the way search engines or internet publishers work, in that he is a "webmaster" who supports several business sites. Even without any specialized training in website management, the average individual who uses the internet is aware of the largest search engines and could have notified them.[4] Defendants' failure to fulfill the terms of ¶ 4 is a violation of the Consent Judgment and Permanent Injunction.

Under similar facts in *International Star Registry of Illinois, Ltd. v. SLJ Group, Inc.*, 325 F. Supp. 2d 879, 883 (N.D. Ill. 2004), the defendant argued (as Abruzzese does here) that search engine links to its site based on objectionable terms appeared because the search engines maintained the defendant's old information in their archives. The court rejected that rationale because the defendant had had sufficient time to establish a monitoring system to discover and eliminate inadvertent errors and defendant had failed to conduct consistent, simple searches of internet search engines, which

---

[4] Had Defendants made the effort to notify the major search engines, they could credibly argue that, in the absence of notice and demand for cure, they should not be found in violation if some of the less popular engines continued to post old pages. Having made no such effort, Defendants' argument rings hollow. Conversely, had Plaintiff notified Defendants of the offending searches and demanded compliance with the agreement, it would have a stronger argument for imposition of significant penalties.

required minimal effort. *Id*. at 884.[5] The failure to take steps to correct old search engines in the case at bar is even more clearly a violation because the duty to inform was expressly included in the Consent Judgment.

The question then arises as to the appropriate sanction for the violation. Defendants agreed in the parties' Settlement Agreement that Defendants would be liable for liquidated damages of $2,000 for each infringing act, plus reasonable attorney's fees. This provision was not incorporated in the Consent Judgment, and, by its terms, it does not apply to the violation of the duty shown here. Thus, the Court must determine an appropriate remedy, bearing in mind the agreement of the parties as to other violations, the nature of this violation, and the conduct of both parties in performing and enforcing their agreement and the Judgment. It is difficult to quantify the amount of damages that should be awarded in this case. Plaintiff made no effort to show its lost profits or any improper gain by Defendants. Under the circumstances, it is sufficient to vindicate the Court's decree by imposing a modest financial penalty on Defendants. The amount of **$2,500.00** is recommended as commensurate with the harm likely created without being unduly punitive.

Attorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance. *Abbott Laboratories v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000). In this case, Plaintiff originally sought liquidated damages for forty specific violations of the Consent Judgment, however, after testimony and argument at the hearing, Plaintiff withdrew its claims for all but seven of the violations (Nos. 1-6, 20). As explained above, the Court has found only one violation of the terms of the Consent Judgment based on the evidence

---

[5] One significant difference in *International Star* from the facts of this case is that the plaintiff notified the defendant of the violations and defendant did not correct the objectionable terms until after a heavy sales period was over. *Id*. at 884-85. It is undisputed in this case that Plaintiff did not notify Defendants before filing its Motion for Contempt that the objectionable terms were still directing consumers to Defendants' websites, and there is no proof of lost sales.

presented at the hearing. The fee award should be limited with these circumstances in mind. Rather than engage in another round of papers and hearings, it is recommended that fees of **$1,500.00** be awarded as an appropriate and reasonable allowance for the legal effort that should have been needed to bring the violation before the Court.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 28, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy