# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TECH TRADERS, INC.,**

**Plaintiff,**

-vs-                                                              **Case No.  6:03-cv-199-Orl-22DAB**

**ALBERT E. ABRUZZESE and HY-TECH
THERMAL SOLUTIONS, LLC,**

**Defendants.**

_____

## ORDER

## I.  INTRODUCTION

This cause comes before the Court for consideration of Plaintiff's, Tech Traders, Inc.,

Motion and Memorandum for Contempt and for Order Finding Defendants Have Violated the

Permanent Injunction and Awarding Liquidated Damages ("Motion for Contempt and

Liquidated Damages") (Doc. No. 64-1), filed on November 5, 2004, to which the Defendants,

Albert E. Abruzzese and Hy-Tech Thermal Solutions, LLC ("the Defendants"), responded

(Doc. No. 68-1) on November 30, 2004.  On January 28, 2005, the Honorable David A. Baker,

United States Magistrate Judge for the Middle District of Florida, Orlando Division, issued a

Report and Recommendation (Doc. No. 79) on Plaintiff's Motion.[1]  In his memorandum

opinion, Judge Baker recommended that Plaintiff's Motion for Contempt and Liquidated

Damages be granted in part, awarding Plaintiff a total of $2,500.00 in liquidated damages and

---

[1]        Judge Baker's Report and Recommendation also includes an Order that DENIED as
moot Defendants' Objection and Motion to Strike Affidavit of David Page (Doc. No. 72) and
Defendants' Motion to Quash Subpoenas (Doc. No. 75).

attorneys fees and costs in the amount of $1,500.00.[2]  Defendants filed an Objection (Doc. No. 81) to Judge Baker's ruling on February 4, 2005.  Having reviewed the Report and Recommendation (Doc. No. 79) and the Defendants' Objection thereto (Doc. No. 81), this Court OVERRULES the Defendants' Objection (Doc. No. 81) and AFFIRMS and ADOPTS Judge Baker's memorandum opinion (Doc. No. 79).

## II. BACKGROUND

The Plaintiff, Tech Traders, Inc., ("Tech Traders" or "Plaintiff"), is a Florida corporation with its principal place of business located in Indian River County, Florida.[3] Defendant Hy-Tech Thermal Solutions, LLC ("Hy-Tech") is also a Florida corporation and has its "regular and established" place of business in Brevard County, Florida.[4]  Defendant Albert E. Abruzzese[5] was a resident of Brevard County, Florida.[6]

In 1996, David Conrad Page ("Page"), founder of Tech Traders, "adopted the trademark INSULADD as a source identifier for his insulating additive for paints."[7]  Plaintiff has used that mark on its "products continuously since that time."[8]  In 1998, Page submitted a trademark

---

[2]     *See* Report and Recommendation (Doc. No. 79) at 7-8.

[3]     *See* Complaint (Doc. No. 1), ¶ 1 at 1.

[4]     *Id.*, ¶ 2 at 2.

[5]     Mr. Abruzzese died on January 27, 2005 during the pendency of this action.  *See* Suggestion of Death Upon the Record Under Rule 25(a)(1) (Doc. No. 80).

[6]     *See* Complaint (Doc. No. 1), ¶ 2 at 2.

[7]     *Id.*, ¶ 8 at 3.

[8]     *Id.*

application to the United States Patent and Trademark Office for INSULADD; he was issued a trademark registration number in July of 2000.[9]

On or about December 22, 2001, Defendant Abruzzese entered into an agreement with Plaintiff "to act as an INSULADD Products Representative and to promote, represent, and sell INSULADD products worldwide."[10]  After obtaining the Products Representative position, Defendants engaged in activities that infringed upon Tech Traders' trademark.[11]  Defendants also created and maintained "competitive websites containing product name references," such as INSUL-AID and INSULAID, "and domain names," such as INSULADDPAINT.COM, INSULADDPAINTS.COM, and INSULAID.COM, "confusingly similar to Plaintiff's federally registered trademark INSULADD."[12]

On February 20, 2003, Tech Traders filed a three-count Complaint (Doc. No. 1) seeking a permanent injunction against and damages from Defendants for their alleged infringement on Tech Traders' federally registered trademark, INSULADD.[13]  Plaintiff also alleged that Defendants had engaged in unfair competition under both federal and Florida law.[14]

On April 5, 2004 the parties filed a Notice of Settlement (Doc. No. 54), and on May 5, 2004 the Court entered a Consent Final Judgment and Permanent Injunction ("Consent

---

[9]     *See id.*, ¶¶ 9-10 at 3.

[10]    *Id.*, ¶ 12 at 4.

[11]    *See* Consent Final Judgment and Permanent Injunction (Doc. No. 62), ¶ 2 at 1.

[12]    Complaint (Doc. No. 1), ¶ 13 at 4; ¶ 16 at 5.

[13]    *See generally* Complaint (Doc. No. 1).

[14]    *See generally id.*

Judgment") (Doc. No. 62) against the Defendants.  In the Consent Judgment, Defendants' do

not dispute that they infringed the mark INSULADD, nor do they dispute that its infringements

"are violations of 15 U.S.C. §§ 1117 and 1125(a) and represent unfair competition under the

common law of Florida."[15]  Additionally, the Consent Judgment restricts Defendants from:

> (a) using the mark INSULADD or any colorable imitation or formative
> thereof, including without limitation the marks INSULAID and INSUL-
> AID; (b) except for existing paint products INSUL FLEX and INSUL
> COOL COAT, adopting or using any mark containing the terms "Insul"
> or "Add" or any colorable imitation thereof . . . ; (c) using any product
> test data prepared for Plainitff's products; and (d) using unsupported or
> undocumented third party endorsements of Defendants' products.[16]

Paragraph 4 of the Consent Judgment further requires that:

> [w]ithin thirty (30) days from the date of this Order, both Defendants
> shall have removed all of Defendants' Internet references, postings,
> advertisements or search engine listings containing the marks
> INSULADD, INSULAID, INSUL-AID or any colorable imitation
> thereof.  To the extent that Defendants do not control such references,
> postings, advertisements or search engine listings, then Defendants shall
> notify each publisher of such in writing and request each publisher to
> withdraw the objectionable references, and provide each publisher with
> a copy of this Order.  Defendants will provide copies of those
> communications to Plaintiff.[17]

On November 5, 2004, Plaintiff filed a Motion for Contempt and Liquidated Damages

(Doc. No. 64-1) alleging that Defendants had violated the permanent injunction by: (1) "using

the terms INSULAID, INSUL-AID, and INSUL-ADD to direct web searches to its sites," (2)

"using the terms INSUL-FLAT and INSUL-PRIME to describe their products," and (3)

---

[15]     Consent Judgment (Doc. No. 62), ¶¶ 1-2 at 1.

[16]     *Id.*, ¶ 3 at 2.

[17]     *Id.*, ¶ 4 at 2.

"continuing to use unsupported or undocumented third party endorsements of their products."[18]

"Although Plaintiff originally sought liquidated damages for forty specific violations of the

Consent Judgment, after testimony and argument at [an evidentiary hearing before Judge

Baker], Plaintiff withdrew its claims for all but seven of the violations," the infringing acts

alleged in ¶¶ 1-6 and ¶ 20.[19]

On January 28, 2005, Magistrate Judge Baker entered a Report and Recommendation

(Doc. No. 79) finding that the infringing acts alleged in ¶¶ 1-6 and ¶ 20 of Plaintiff's Motion

for Contempt and Liquidated Damages (Doc. No. 64-1) were not violations of the Consent

Judgment.[20]   However, Judge Baker did find that Mr. Abruzzeese violated ¶ 4 of the Consent

Judgment.[21]   The parties had previously entered into a Settlement Agreement (Doc. No. 64-2,

Ex. A) that stated that Plaintiff would be entitled to $2,000.00 in liquidated damages for each

of Defendants' infringing acts plus reasonable attorney's fees.[22]   Because the Settlement

Agreement had not been incorporated in the Consent Judgment, Judge Baker determined that

the liquidated damages provision of the Settlement Agreement did not apply.[23]   Instead, Judge

Baker recommended that an award of damages in the amount of $2,500.00   would be

---

[18]     Plaintiff's Motion for Contempt and for Liquidated Damages (Doc. No. 64-1) at 3.

[19]     Report and Recommendation (Doc. No. 79), n.1 at 3.

[20]     *See id.* at 6.

[21]     *See id.*

[22]     *See* Settlement Agreement (Doc. No. 64-2) at 1.

[23]     *See* Report and Recommendation (Doc. No. 79) at 7.

"commensurate with the harm likely created without being unduly punitive."[24]  Judge Baker also recommended that "fees of $1,500.00 be awarded as an appropriate and reasonable allowance for the legal effort that should have been needed to bring the violation before the Court."[25]

## III.  ASSIGNMENTS OF ERROR

In their Objection (Doc. No. 81) to Magistrate Judge Baker's Report and Recommendation (Doc. No. 79), the Defendants assign four points of error.  First, they argue that Judge Baker's determination that Mr. Abruzzese violated ¶ 4 of the Consent Judgment (Doc. No. 62) was erroneous.  Defendants argue that Mr. Abruzzese complied with the stipulations set out in ¶ 4 by contacting Google, the only search engine that he knew was returning "objectionable search results," and requesting that Google would re-index Defendants' web pages.[26]  Second, the Defendants contend that Judge Baker's assertion that "'Mr. Abruzzese made absolutely no effort to comply with [paragraph 4] of the Consent Judgment' is not correct."[27]  Defendants argue that *Int'l Star Registry of Illinois, Ltd. v. SLJ Group, Inc.*, 325 F. Supp. 2d 879 (N.D. Ill. 2004), a case Judge Baker relies on in his opinion, is distinguishable from the case at hand because in *Int'l Star Registry* the defendant "had prior, repeated written notice of specific search engine results which were directing users to its

---

[24]     *Id.*

[25]     *Id.* at 8.

[26]     Objection to Magistrate Judge Baker's Report and Recommendation (Doc. No. 81), ¶ 2 at 3.

[27]     *Id.*, ¶ 3 at 3.

websites with the plaintiff's trademarks, and yet failed to take corrective action."[28] Defendants maintain that they contacted Google and requested the re-indexing of their websites when they were made aware of specific search engine results.[29]  Third, Defendants argue that "Judge Baker's strict reading of paragraph 4 of the injunction . . . would require the Defendants to monitor websites and search engines to which they never knowingly submitted their websites for inclusion," a responsibility that Defendants call an "unattainable burden."[30]  Defendants again distinguish the case at hand from *Int'l Star Registry*, pointing out that the defendant in *Int'l Star Registry* was under no "affirmative duty to notify *each* and *every* publisher of its Internet references, postings, advertisements, or search engine listings containing the marks in question and send a written request to withdraw the references."[31]  Last, Defendants assert that "an award of attorney's fees to Plaintiff is unwarranted."[32]  Defendants note that Plaintiff withdrew thirty-three of the forty counts in its Motion for Contempt and Liquidated Damages (Doc. No. 64-1) after Judge Baker chided Plaintiff at an evidentiary hearing, and that Defendants ultimately prevailed on the remaining seven counts.[33]  As such, Defendants argue that "[i]f any party is entitled to attorney's fees in this case, it is Defendants."[34]

---

[28]     *Id.*

[29]     *See id.*

[30]     *Id.*, ¶ 4 at 4.

[31]     *Id.*, ¶ 4 at 3.

[32]     *Id.*, ¶ 7 at 6.

[33]     *See id.*, ¶ 5 at 4-5.

[34]     *Id.*, ¶ 6 at 5.

Additionally, Defendants request a modification of the Consent Judgment (Doc. No. 62) "to more concretely define Plaintiff's obligations under the permanent injunction, as well as to require Plaintiff to give notice to Defendants . . . [and] a reasonable opportunity to cure[] before filing a Motion for Contempt with the Court."[35]

## IV.  STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation, the district judge must make a *de novo* determination of the findings and/or recommendations to which any party objects. *See* 28 U.S.C. § 636(b)(1)(C) (2003). "This requires that the district judge 'give fresh consideration to those issues to which specific objection has been made by a party.'" *Lacy v. Apfel*, 2000 U.S. Dist. Lexis 21437, *2-3 (M.D. Fla. Oct. 20, 2000) (quoting *Jeffrey S. v. State Bd. of Educ.*, 896 F. 2d 507, 512 (11th Cir. 1990)). "In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*." *Id.* at 3 (emphasis added) (internal citation omitted).  However, regardless of whether objections are filed, a district judge must review a magistrate's legal conclusions *de novo. See id.*  After reviewing a report and recommendation, objections, and responses thereto, the district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* § 636(b)(1)(C).

## V.  LEGAL ANALYSIS

Judge Baker correctly explains the standard for determining whether a permanent injunction has been violated.  To wit:

---

[35]        *Id.*, ¶ 8 at 6-7.

To determine whether a defendant has violated a permanent injunction, the Court must consider the totality of the documents to determine whether an ordinary person would be able to ascertain exactly what conduct the consent judgment proscribes. *Abbott Laboratories v. Unlimited Beverages, Inc.,* 218 F.3d 1238, 1241 (11th Cir. 2000). The Court should begin with a close examination of the judgment. *Id.* at 1240. As the Eleventh Circuit has explained:

> [A] court must craft its orders so that those who seek to obey may know precisely what the court intends to forbid. . . . Thus, Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained."

*Id.* (Fed. R. Civ. P. 65(d)). Under this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Id.* (quoting *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998)). A consent judgment need not recite every possible way in which a violation might occur when the proscribed conduct is readily ascertainable to an ordinary person. *Id.* at 1241. If the Court finds contempt, the district court has broad discretion to fashion an appropriate remedy. *Id.* at 1242 (*Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1519 (11th Cir. 1990)).[36]

The Consent Judgment made clear that Defendants were to remove all of their Internet references or search engine listings containing the marks INSULADD, INSULAID, INSUL-AID, or any colorable imitation thereof within thirty (30) days from the date of the Order.[37] Abruzzese testified at the January 10, 2005 evidentiary hearing that, as a webmaster, he builds and publishes webpages. Abruzzese further testified that he removed all listing references to

---

[36]    Report and Recommendation (Doc. No. 79) at 3-4.

[37]    Consent Judgment (Doc. No. 62), ¶ 4 at 2.

INSUL-ADD or INSUL-AID on websites that he controlled within twenty-four hours of the Consent Judgment's entry.   Page contended that searches for the objectionable terms INSULAID and INSUL-AID resulted in search engines generating a list of businesses that sold such products with two of Defendant Abruzzese's companies in the top three, but was able to present no evidence regarding those searches.   Defendants argued that the search engines that brought up those webpages were based on old, or "cached," information.[38]  Because Page could not produce evidence of up-to-date searches that returned objectionable results, the Court was left with "only the disputed and equivocal testimony of both parties about whether the webpages within Defendants' control were changed."[39]  Without evidence that Plaintiff's searches actually returned objectionable results, Defendants' alleged actions in ¶¶ 1-6 and ¶ 20 of Plaintiff's Motion for Contempt cannot be said to constitute a violation of the Consent Judgment.

The Consent Judgment further made clear that Defendants were to request in writing that the publishers of objectionable references, postings, advertisements, or search engine listings over which they had no control to withdraw those references, postings, advertisements, and listings.   Defendants were also ordered to provide each publisher with a copy of the Consent Judgment and Permanent Injunction and provide copies of those communications to Plaintiff.  By his own admission during the evidentiary hearing, Defendant Abruzzese made no effort to comply with these provisions of the Consent Judgment.  The Eleventh Circuit noted in *Newman v. Graddick* that "a person who attempts with reasonable diligence to comply with

---

[38]     "Cached" information is collected periodically and stored by the search engine and is not immediately updated.  *See* Report and Recommendation (Doc. No. 79) at 5.

[39]     *Id.* at 6.

a court order should not be held in contempt."  740 F.2d 1513, 1525 (11th Cir. 1984) (citing *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981)).  It does not seem that Defendant Abruzzese has made a diligent effort to comply with ¶ 4 of the Consent Judgment.  In their Objection (Doc. No. 81), to the Report and Recommendation, Defendants point out that Abruzzese stated in an Affidavit (Doc. No. 68-4, Ex. 3) "that he also contacted Google.com and requested that Google re-index Defendants' websites so that the subject terms would not show up in Google.com searches."[40]  Although Mr. Abruzzese indicates in his Affidavit that his computer was destroyed and he was unable to produce copies of the e-mail he sent to Google to request the re-indexing of his webpages, Mr. Abruzzese does not indicate that he made any efforts to supply Google with a copy of the Consent Judgment and Permanent Injunction or to provide copies of his communications with the Plaintiff as Ordered by this Court.  Even assuming that Mr. Abruzzese did in fact contact Google.com and request that they re-index his webpages, the Defendants are still in violation of ¶ 4 of the Consent Judgment.  Defendant Abruzzese acknowledged in his Affidavit that it would take "considerable time" to remove all objectionable terms and graphics from Hy-Tech's websites.  Likewise, Defendant Abruzzese should have known that it would take considerable time and effort on his part to ensure that the publishers over whom he has no control removed objectionable references from their websites as well.

Defendant Abruzzese argues in his objection that the defendants in a case that Judge Baker relied on in rendering his recommendation, *Int'l Star Registry of Illinois, Ltd. v. SLJ Group, Inc.*, 325 F. Supp. 2d 879 (N.D. Ill. 2004), had "prior, repeated, written notice of

---

[40]     *See* Objection to Report and Recommendation (Doc. No. 81), ¶ 2 at 2.

*specific* search engine results which were directing users to its websites with the Plaintiff's trademarks."[41] Defendants Abruzzese and Hy-Tech contend that when they "were made aware of specific search engine results," they contacted Google to request the re-indexing of its websites. However, the Consent Judgment and Permanent Injunction placed no obligation on Tech Traders to notify Defendants about objectionable search engine results. Instead, the Consent Judgment places the burden on *Defendants*–not Tech Traders–to ensure that outside web publishers no longer include any of the enjoined references on their sites. In *Int'l Star Registry*, the defendant was found in contempt because the court determined that they had not been "'reasonably diligent and energetic' in attempting to fulfill its obligations under the Consent Injunction." 325 F. Supp. 2d at 883. The same could be said of Defendants in the case at hand. The notification of one outside publisher, namely Google.com, hardly satisfies the requirements imposed upon Defendants by ¶ 4 of the Consent Judgment. Defendants argue that this Court should modify the Consent Judgment "to the extent that it is unnecessarily over-broad and to the extent that there is no notice requirement imposed upon Plaintiff."[42] The United States Supreme Court stated in *Rufo v. Inmates of the Suffolk County Jail* that:

> [o]rdinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree. If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under [Federal Rule of Civil Procedure] 60(b).

---

[41]     *See id.*, ¶ 3 at 3.

[42]     Objection to Report and Recommendation (Doc. No. 81), ¶ 8 at 6.

502 U.S. 367, 385 (1992) (internal citations omitted).  To the Court's knowledge, there has been no significant change in the facts of this case or applicable law that would warrant revision of the Consent Judgment.  *See id.* at 393 ("a party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance").

Additionally, an award of $1,500.00 in attorney's fees to Plaintiff is reasonable.  The Eleventh Circuit stated in *Abbot Lab. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000), that "attorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." (citing *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 458 (11th Cir. 1984)).  Plaintiff clearly exerted legal effort in attempting to enforce the Consent Judgment, which the Defendants were found to have violated, against the Defendants.  To award attorney's fees to the violator of a permanent injunction would seem to subvert the very protections that the law attempts to provide through the issuance such injunctions.  Moreover, Defendants' request for an award of attorney's fees against Plaintiff under Federal Rule of Civil Procedure 11(c)(B) is without merit.  Although the initial forty violations alleged in Plaintiff's Motion for Contempt were pared to seven, there is no evidence that Plaintiff brought its allegations for frivolous or improper reasons.  As such, the $1,500.00 award of attorney's fees to Plaintiff stands.

## VI.  CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      The Defendants', Albert E. Abruzzese and Hy-Tech Thermal Solutions, LLC, February 4, 2005 Objections (Doc. No. 81) to United States Magistrate Judge

David A. Baker's January 28, 2005 Report and Recommendation (Doc. No. 79) are OVERRULED.

2.      United States Magistrate Judge David A. Baker's January 28, 2005 Report and Recommendation (Doc. No. 79) is APPROVED AND ADOPTED.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 6, 2005.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party
Administrative Law Clerk
United States Magistrate Judge David A. Baker
Courtroom Deputy